IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–01280–EWN

ANDREW L. SENA,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

_____

**ORDER AND MEMORANDUM OF DECISION**
_____

    This is a social security benefits appeal under 42 U.S.C. § 405(g) (2005). Plaintiff Andrew L. Sena challenges the final decision of the Commissioner of Social Security (the "Commissioner"), denying his application for Disability Insurance Benefits and Supplemental Security Income Benefits. Jurisdiction is based on 42 U.S.C. § 405(g).

**FACTS**

*1.  Medical Evidence*

    Plaintiff was born on September 17, 1965, and was thirty-six years old at the onset of his alleged disability. (Admin. R. at 14, 62, 66 [filed Sept. 10, 2004] [hereinafter "Admin. R."].)

Plaintiff graduated from high school and has worked in the vocationally relevant past as a truck driver, maintenance worker, and warehouse worker. (*Id.* at 67, 92.) Plaintiff alleges that he became unable to work beginning on February 14, 2002 due to pain and symptoms associated with arthritis, high blood pressure, diabetes, and other physical problems. (*Id.* at 62, 66.)

Plaintiff has a history of obesity, and has been diagnosed with and received treatment for hypertension and high cholesterol. (*Id.* at 117, 125–29,137–42.) Plaintiff is six feet two inches tall and weighs 385 pounds. (*Id.* at 228.) On February 14, 2002, Plaintiff went to the emergency room at Arkansas Valley Regional Medical Center for treatment for injuries he sustained in a motor vehicle accident while working as a truck driver. (*Id.* at 114–23.) The emergency room physician diagnosed Plaintiff with a chest wall contusion and treated it with a cold compress and medication. (*Id.* at 119.) The emergency room staff could not perform a computed tomography scan ("CT scan") on Plaintiff because of his size. (*Id.* at 117, 121.) Chest and cervical spine X-rays were normal. (*Id.* at 121.) The medical center released Plaintiff the same day in stable condition. (*Id.* at 114, 118.)

Plaintiff continued to complain of body pain, tenderness in his chest and left shoulder, and edema in his lower legs. (*Id.* at 129–32, 134.) As reflected in a treatment note dated February 19, 2002, Plaintiff was diagnosed with obesity, hypertension controlled by medication, hyperlipidemia, and pedal edema. (*Id.* at 128, 133.)[1] During the Spring and Summer of 2002,

---

[1]Hyperlipidemia is the presence of excess fat or lipids in the blood. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1113 (Philip Babcock Gove, Ph.D. et al., eds., 1986).

Plaintiff underwent physical therapy at Prowers Medical Center for his pain and injuries. (*Id.* at 168–76, 177–80.) In April 2002, Plaintiff underwent a physical examination, which revealed that Plaintiff: (1) had excellent grip strength, normal feeling, a mildly limited range of motion in his shoulder and elbow, and (2) had met all physical therapy goals, except that he experienced pain with activity. (*Id.* at 159, 178–79, 182–83.) In May 2002, Plaintiff reported that he was feeling better, and in June 2002, Plaintiff was able to tolerate a modified exercise program. (*Id.* at 171–72, 175–77.) In July 2002, Plaintiff reported that his exercises were helping, and he experienced improved range of motion. (*Id.* at 160.)

On July 22, 2002, Chope T. Archuleta, M.D. diagnosed Plaintiff with degenerative joint disease, edema, hyperlipidemia, obesity, controlled hypertension, and probable sleep apnea. (*Id.* at 163.) Dr. Archuleta noted Plaintiff's complaints of swelling in the legs, diffuse joint pain, pain in the left hip and left shoulder, and shortness of breath. (*Id.*) Radiology reports revealed no discrete evidence of acute cardiopulmonary disease and no evidence of fracture or dislocation involving the left shoulder or left hip, the reports revealed evidence of mild degenerative changes in the left shoulder and left hip. (*Id.* at 189–91.)

On August 26, 2002, Dr. Archuleta reported that Plaintiff's X-rays demonstrated osteoarthritis of the left hip and shoulder. (*Id.* at 157.) Dr. Archuleta also noted Plaintiff's complaints of persistent peripheral edema, shortness of breath and dyspnea on exertion, and pain in the left hip and shoulder. (*Id.* at 157.) Dr. Archuleta evaluated and prescribed medication for

degenerative joint disease, hypokalemia and glucose intolerance.[2]  (*Id.* at 157.)  Dr. Archuleta also assessed Plaintiff's edema as likely to be secondary to sleep apnea and obesity, and recommended that Plaintiff undergo a sleep study.  (*Id.* at 157.)

In August and September 2003, Dr. Archuleta treated Plaintiff for weakness and continued edema in his legs, and scheduled a sleep study for Plaintiff.  (*Id.* at 207–10.)  Craig Shapiro, M.D. performed the sleep study, diagnosed Plaintiff with moderate obstructive sleep apnea, and recommended that Plaintiff use a continuous positive airway pressure ("CPAP") oxygen machine.  (*Id.* at 212.)

On December 18, 2003, occupational medical specialist Velma L. Campbell, M.D. performed a medical examination of and compiled a consultation report on Plaintiff.  (*Id.* at 211–14.)  Plaintiff complained of pain in both hips; increased hip pain with bending or stooping; shortness of breath upon exertion, such as walking rapidly; inability to walk up or down stairs without assistance; inability to sleep flat, even with assistance of CPAP; and inability to squat or kneel.  (*Id.* at 211).  Plaintiff stated that he spent most his time resting and was able to perform minimal household tasks with frequent rest, but often felt tired, achy, and sore.  (*Id.* at 211.)

Upon physical examination, Dr. Campbell reported that Plaintiff had no apparent cognitive deficits, moved about the room without difficulty, and walked with a limp but did not use an assistive device.  (*Id.* at 213).  Dr. Campbell found that Plaintiff's range of motion was full

---

[2] Hypokalemia is an abnormally low potassium level.  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1116 (Philip Babcock Gove, Ph.D. et al., eds., 1986).

at the right shoulder, both elbows and wrists, and limited in the left shoulder. (*Id.* at 213.) Dr. Campbell diagnosed Plaintiff with morbid obesity, sleep apnea and hypoventilation of obesity, lower extremity edema, osteoarthritis in left shoulder and both hips, and type two diabetes mellitus. (*Id.* at 214.)

Based on the examination, Dr. Campbell posited that Plaintiff's physical capabilities included: lifting or carrying ten pounds less than one-third of the work day; infrequent, brief, and non-repetitive bending, stooping, squatting and kneeling; walking and standing, limited to twenty minutes at a time, two hours a day total; infrequent, brief, and non-repetitive reaching or working above shoulder height; occasional and brief repetitive use of shoulders, arms, wrists, and hands, without strenuous force or grip; unrestricted seated activities, except for the need to change position about very forty to sixty minutes to reduce discomfort and to stretch; and unimpaired fine coordination of the hands. (*Id.* at 214.) Dr. Campbell opined that Plaintiff should avoid walking on uneven surfaces; climbing on ladders and step-stools; working on elevated work stations; using vibrating tools or equipment; and performing any activities that require rapid, coordinated physical responses for safety. (*Id.* at 214.) Dr. Campbell posited that Plaintiff's respiratory condition limited his activity to "less than sedentary with one or more rest periods required in the day, daytime fatigue and somnolence." (*Id.* at 214.) Dr. Campbell noted that Plaintiff had no indication of speech, hearing, or cognitive deficits upon examination, but Plaintiff

has a history of learning impairment that would be relevant to vocational rehabilitation training. (*Id.* at 214.)

2.  *Procedural History*

Plaintiff filed an application for disability insurance benefits and supplemental security income benefits on September 19, 2002. (*Id.* at 62–64.) The social security administration denied Plaintiff's application on December 12, 2002. (*Id.* at 20–21, 47–51.) On December 31, 2002, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 45.) The ALJ held a hearing on January 9, 2004, at which Plaintiff and a vocational expert, Martin Rauer, testified. (*Id.* at 215–35.)

Plaintiff gave testimony regarding his past work as a truck driver. (*Id.* at 219.) Plaintiff testified that he left his position because of problems with his legs and hips and because he was involved in a motor vehicle accident on February 14, 2002. (*Id.* at 219.) Plaintiff stated that there was no connection between the motor vehicle accident and his health problems. (*Id.* at 219.) Plaintiff explained that he was no longer able to perform functions required by his job, such as lifting, pressing the clutch, and climbing on the truck or ladders. (*Id.* at 219–20.) Plaintiff stated that he has good coordination with his hands, but has lost strength in his left hand grip. (*Id.* at 224.)

Plaintiff testified that prior to working as a truck driver, he worked sporadically for several years as county maintenance worker. (*Id.* at 220–21.) Plaintiff stated that he could not

return to this position because he has difficulty breathing when he exerts himself and because of pain in his hips. (*Id.* at 221.) Plaintiff also testified that he worked previously in shipping and handling jobs at a grain silo, a warehouse, and an air-conditioning plant. (*Id.* at 221–24.)

Plaintiff testified that he sleeps with an CPAP oxygen machine to help him breathe. (*Id.* at 225.) He explained that on a typical day he takes pain pills, drives his children to school, returns home, and sits and sleeps. (*Id.* at 225.) Plaintiff testified that his wife does most of the household duties. (*Id.* at 226.)

Plaintiff testified that he would probably be able to stand for about ten minutes before experiencing pain and could lift ten to fifteen pounds. (*Id.* at 226–27.) Plaintiff testified that he could not bend his knees and squat to the floor without experiencing pain. (*Id.* at 227.) Plaintiff stated that he could climb three or four steps before experiencing shooting pain in his hips, legs and back. (*Id.* at 227–28.) Plaintiff testified that he could walk approximately one half of a city block before becoming winded. (*Id.* at 230.) Plaintiff stated that he experiences multiple sleep disturbances every night and regularly feels exhausted and dozes off during the day. (*Id.* at 231.) Plaintiff testified that Dr. Archuleta prescribed oxygen at or around the time Plaintiff underwent the sleep study, approximately three or four months prior to the hearing.[3] (*Id.* at 229.)

Vocational expert Martin Rauer testified at the hearing regarding his review of the vocational exhibits in Plaintiff's file. (*Id.* at 232.) Mr. Rauer testified that Plaintiff's past work

---

[3] In the interest of clarity, I note that Plaintiff underwent the sleep study on September 29, 2003, and the hearing in question took place January 9, 2004. (Admin. R. at 212, 215.)

-7-

required medium to heavy exertion. (*Id.* at 232.) Mr. Rauer testified that an individual similarly situated to Plaintiff — an individual limited to an exertional level in a full range of sedentary with non-exertional limitations of only occasional bending, squatting or kneeling, no climbing, no unprotected heights, only occasional activity above chest level, no activity below waist level, and no constant usage of the upper extremities as in an assembly line — could not perform Plaintiff's past work, but could perform sedentary work as a charge account clerk, dispatcher, or information clerk. (*Id.* at 233.) Mr. Rauer stated that an individual subject to the same limitations as above, and also subject to the additional limitations of fatigue, shortness of breath, and the need to go to sleep on an unpredictable basis throughout the day would not be suitable for competitive employment. (*Id.* at 234.)

On March 29, 2004, the ALJ issued his decision in which he determined that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 13–19.) The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of sedentary work. (*Id.* at 16.) The ALJ noted that such work "exist[s] in significant numbers in the national economy." (*Id.* at 17.)

In reaching his conclusion, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 14, 2002. (*Id.* at 14.) The ALJ also determined that Plaintiff had severe impairments in the form of obesity, left shoulder disorder, and left hip disorder, all of which are medically determinable, severe impairments. (*Id.* at 14.) Although these impairments

are "severe," the ALJ determined that the impairments are "not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (*Id.* at 14–15.) The ALJ noted that "the record does not support a finding that any of the [Plaintiff's] documented impairments are sufficiently severe as to meet or equal the requirements of any listing." (*Id.* at 15.) Further, the ALJ found that Plaintiff's limitations "are not as limiting as [Plaintiff] has alleged." (*Id.* at 16.)

In determining Plaintiff's RFC, the ALJ considered Plaintiff's complaints regarding shortness of breath, sleep apnea, diabetes, and learning impairments and found that: (1) Plaintiff's complaints regarding shortness of breath are not supported by medical test results demonstrating any restrictive or obstructive disease, and Plaintiff's breathing difficulty "does not seem to prevent all work whatsoever;" (2) Plaintiff's sleep apnea is being treated effectively with CPAP oxygen and "does not appear to more than minimally effect his ability to perform basic work functions;" (3) Plaintiff lacks evidence of organ damage, neuropathy or retinopathy, which suggests that Plaintiff's diabetes "does not more than minimally effect [Plaintiff's] ability to perform work activities;" and (4) Plaintiff's history of learning impairments is overshadowed by Plaintiff's intelligence test results, which show normal range of function and by Plaintiff's ability to pass a commercial driver's license test, which suggests that Plaintiff "has the capacity to perform some semiskilled work." (*Id.* at 16.) The ALJ stated that Plaintiff's credibility was eroded by Plaintiff's noncompliance with physicians' advice instructing Plaintiff to lose weight.

(*Id.*)  The ALJ found that Plaintiff's compliance "would at least reduce, if not eliminate, some of the problems [about which Plaintiff] testified at the hearing." (*Id.*)

Based on the evidence presented, the ALJ issued his RFC determination. The ALJ concluded that:

> during the relevant period under examination, [Plaintiff] was sufficiently able to perform a full range of sedentary work, excluding frequent bending and squatting, climbing unprotected heights, more than occasional above chest reaching, and no constant use of the upper extremities.

(*Id.* at 16.)  In accord with this RFC, the ALJ determined that Plaintiff could not perform his past relevant work. (*Id.* at 17.)  The ALJ further determined that there are a significant number of jobs in the local and national economy that Plaintiff could still perform successfully. Therefore, the ALJ found that Plaintiff was not disabled. (*Id.*)

Plaintiff requested a review of the ALJ's decision on April 8, 2004. (*Id.* at 7.)  The appeals council affirmed the ALJ's decision on May 3, 2004, making it the final administrative decision for the purposes of judicial review. (*Id.* at 4–6.)  Plaintiff filed a complaint in this court on June 21, 2004 challenging the Commissioner's denial of disability and supplemental social security income benefits. (Compl. [filed June 21, 2004].)  Plaintiff filed his opening brief on October 7, 2004. (Pl.'s Opening Br. [filed Oct. 7, 2004] [hereinafter "Pl.'s Br."].)

## ANALYSIS

### *1. Standard of Review*

Section 405(g) of the Social Security Act establishes the scope of this court's review of the Commissioner's denial of disability insurance benefits. *See* 42 U.S.C.A. § 1383(c)(3) (2004) (incorporating review provisions of 42 U.S.C.A. § 405[g]). Section 405(g) provides, in relevant part, that:

> [t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner of Social Security, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C.A. § 405(g). Thus, this court's review is limited to determining whether the record as a whole contains substantial evidence supporting the Commissioner's decision. *See id.*; *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992). The court must uphold the Commissioner's decision if it is supported by substantial evidence. *See Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir. 1987). This court cannot reweigh the evidence nor substitute its judgment for that of the ALJ. *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir. 1987). That does not mean, however, that my review is merely cursory. To find that the ALJ's decision is supported by substantial evidence, the record must include sufficient relevant

evidence that a reasonable person might deem adequate to support the ultimate conclusion. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). The ALJ's decision is also subject to reversal for application of the wrong legal standard. *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Frey,* 816 F.2d at 512.

2.   *Evaluation of Disability*

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than sixty-five years of age, and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The Social Security Act defines a disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.A. § 1382c(a)(3)(A) (2004). In proving his disability, a claimant must make a *prima facie* showing that he is unable to return to the prior work he has performed. *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988). Once the claimant meets that burden, the Commissioner must show that the claimant can do other work activities and that the national economy provides a significant number of jobs which the claimant could perform. *Frey*, 816 F.2d at 512.

The Commissioner has established a five-step process to determine whether a claimant qualifies for disability-insurance benefits. *See Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987) (describing five-step analysis); 20 C.F.R. § 404.1520 (2004). A claimant may be declared disabled or not disabled at any step; and, upon such a determination, the subsequent steps may be disregarded. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988); 20 C.F.R. § 404.1520(a). First, the claimant must demonstrate that he is not currently involved in any substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment (or combination of impairments) which limits his physical or mental ability to do basic work activities. *Id.* § 404.1520(c). At the third step, if the impairment matches or is equivalent to established listings, then the claimant is judged conclusively disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairments are not equivalent to the listings, the analysis proceeds to the fourth step. At this stage, the claimant must show that the impairment prevents him from performing work he has performed in the past. *See Williams*, 844 F.2d at 751 (citations omitted). If the claimant is able to perform his previous work, he is not disabled. *Id.*; 20 C.F.R. § 404.1520(e). The fifth step requires the Commissioner to demonstrate that (1) the claimant has the RFC to perform other work based on the claimant's age, education, past work experience, and (2) there is availability of that type of work in the national economy. *See Williams*, 844 F.2d at 751; 20 C.F.R. § 404.1520(f).

### 3.     *Disability Determination*

Plaintiff sets forth three arguments in support of his contention that the ALJ's decision is erroneous. First, Plaintiff argues that the ALJ wrongly discounted Plaintiff's credibility. (*Id.* at 6–8.) Second, Plaintiff argues that the ALJ erred in determining Plaintiff's RFC. (*Id.* at 8–10.) Third, Plaintiff generally alleges that the ALJ's evaluation of Plaintiff's impairments and determination of Plaintiff's RFC are not supported by substantial evidence. (Pl.'s Br. at 5–6.) I address each argument in turn.[4]

#### a.     *The ALJ Properly Evaluated Plaintiff's Credibility*

Plaintiff contends that the ALJ "made critical credibility decisions penalizing [P]laintiff," and "penalized [Plaintiff] for his obesity by finding he lacked credibility because he has failed to lose weight as recommended by his physicians." (Pl.'s Br. at 5, 10.) Although it is difficult to distill Plaintiff's precise argument, it seems Plaintiff essentially contends that the ALJ erred in assessing Plaintiff's credibility.

The ALJ properly assessed Plaintiff's credibility in his decision. "'Credibility is the province of the ALJ.'" *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (quoting *Brown v. Bowen*, 801 F.2d 361, 362-63 [10th Cir. 1986]). Credibility determinations made by an ALJ "should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001). This court may not re-weigh the evidence and substitute its judgment

---

[4]Plaintiff's arguments overlap to a degree. Therefore, I consolidate Plaintiff's substantive arguments where required by logic or conciseness.

for the ALJ. *Id.* at 909. In assessing credibility, the ALJ may consider factors including the frequency of medical contacts, extensiveness of attempts to obtain relief, subjective measures of credibility, and the consistency and compatibility of the nonmedical evidence with the medical. *Fessler v. Apfel*, 11 F. Supp. 2d 1244, 1251 (D. Colo. 1998). Further, a plaintiff's credibility may be questioned because of inconsistencies between the plaintiff's testimony and other evidence in the record. *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988). As set forth below, substantial evidence supports the ALJ's determination that Plaintiff's allegations regarding the severity of his physical impairments were not credible. (*See* Admin. R. at 16.) Moreover, objective medical evidence in the record does not support Plaintiff's claim that he is totally disabled due to the severe limitations of his physical impairments.

At the core of Plaintiff's argument is the contention that the ALJ wrongly faulted Plaintiff for disobeying his physicians' orders. (Pl.'s Br. at 10.) Plaintiff's argument, unsupported by legal precedent, is unconvincing. An ALJ may find credibility lacking where Plaintiff fails to follow physician's orders. *Fessler*, F. Supp. 2d at 1251. Here, the ALJ noted, and the record supports, that Plaintiff's physicians advised him to lose weight to alleviate his medical problems — advice which Plaintiff did not follow. (Admin. R. at 125, 127, 228–29.)

Substantial evidence in the record lends further support to the ALJ's findings. Plaintiff's lack of relevant medical or other remedial treatment lends support to the ALJ's findings. *See Luna v. Bowen*, 834 F.2d 161, 165–66 (10th Cir. 1987) (an ALJ may consider the nature and

frequency of treatment sought when assessing the intensity of Plaintiff's pain symptoms).  On February 14, 2002, the onset date of Plaintiff's alleged disability, Plaintiff was released from the Arkansas Valley Regional Medical Center emergency room in stable condition and with recommendation for conservative treatment.  (*Id.* at 114–18.)  Plaintiff sought physical therapy treatment from April 2002 to August 2002.  (*Id.* at 159–85.)  Pursuant to the records of this treatment, Plaintiff was able to tolerate a moderate exercise program and maintained a good range of motion and strength.  (*Id.* at 159, 169, 172, 181, 182.)  From September 2002 to August 2003, Plaintiff sought minimal and infrequent medical treatment.  (*Id.* at 212.)

Finally, Plaintiff testified regarding his use of a cane, and argues in his brief that obesity "result[ing] in an inability to ambulate effectively . . . may substitute for the major dysfunction of a joint." (Admin. R. at 227.)  Plaintiff admonishes the ALJ for failing to analyze the effect of obesity on Plaintiff's ability to ambulate. (Pl.'s Br. at 7, 8.)  Poignantly, the medical evidence in the record does not show that any of Plaintiff's treating physicians prescribed a cane.  In fact, Dr. Campbell's consultative medical examination report reveals that Plaintiff "[m]oves about the exam room without difficulty.  Walks [sic] with a limp, does not use assistive devices."[5] (Admin. R. at 213.)  Based on the foregoing, the ALJ did not err in finding that Plaintiff was not fully credible.

---

[5] It is not lost on this court that Plaintiff testified regarding his use of a cane less than one month after Dr. Campbell's medical examination.  (Admin. R. at 227.)

### b.     *The ALJ Properly Assessed Plaintiff's RFC*

The ALJ properly evaluated the effects of Plaintiff's obesity in determining Plaintiff's RFC. Plaintiff argues that the ALJ erred in rejecting Plaintiff's evidence regarding Plaintiff's need to take oxygen and somnolence due to sleep apnea. (Pl.'s Br. at 6.) Plaintiff argues further that the ALJ did not "analyz[e] the effect of obesity on [Plaintiff]'s ability to ambulate or his cardiovasuclar or respiratory systems . . . ." (Pl.'s Br. at 8.) Plaintiff's arguments lack merit. The ALJ's findings are supported by substantial evidence and are not controverted by any evidence that Plaintiff was totally disabled because of these effects of his obesity.

The ALJ found that Plaintiff's complaints regarding shortness of breath are not supported by evidence or medical test results demonstrating any restrictive or obstructive disease, and Plaintiff's breathing difficulty "does not seem to prevent all work whatsoever." (*Id.* at 16.) Further, the ALJ found that Plaintiff's sleep apnea "does not appear to more than minimally affect his ability to perform basic work functions." (*Id.*) The ALJ noted that Plaintiff's sleep apnea is being "treated effectively by CPAP" oxygen. (*Id.* at 137.) Impairments that are reasonably alleviated by treatment militate against a determination of total disability. *See Kelley v. Chater*, 62 F. 3d 335, 338 (10th Cir. 1995). The ALJ's opinion indicates that he considered the entire record, despite not mentioning every discrete medical condition noted by every examining physician. (Admin. R. at 16.) "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."

-17-

*Clifton v. Chater*, 79 F.3d 1007–10 (10th Cir. 1996).  Moreover, although Plaintiff did testify that he takes oxygen at night when he sleeps and whenever he exerts himself, as discussed above, the ALJ determined that Plaintiff was not credible, and thus properly disregarded Plaintiff's subjective testimony.  (Admin. R. at 226.)

Plaintiff argues that the ALJ wrongly determined Plaintiff's RFC and alleges error because the ALJ "fail[ed] to specifically consider the effects of obesity in determining [P]laintiff's residual functional capacity . . . ."  (*Id.* at 10.)  I conclude that the record shows that the ALJ gave specific attention and consideration to Plaintiff's obesity and the effects of Plaintiff's obesity in this case.  In making his determination, the ALJ properly considered the entire record and the effects of each of Plaintiff's medically determinable impairments, individually and in combination, including "morbid obesity, sleep apnea, hypoventilation of obesity, lower extremity edema, osteoarthritis in the left shoulder and both hips, and Type II diabetes."  (*Id.* at 14–16.)  The ALJ found Plaintiff's obesity to be a severe impairment, and considered the effects of Plaintiff's obesity in determining that Plaintiff could perform limited sedentary work.  (*Id.* at 14, 16.)  Additionally, as noted in his decision, the ALJ considered all of Plaintiff's symptoms and the extent to which the symptoms are consistent with objective medical evidence and other evidence in the record.  (*Id.* at 16–17.)  The ALJ also considered medical opinions, reflecting judgments about the severity of Plaintiff's alleged impairments and resulting limitations.  (*Id.*) The ALJ addressed Plaintiff's various impairments, and nothing in the instant case suggests that

all of Plaintiff's impairments were not properly considered in combination.  *See Eggleston*, 851 F.2d at 1247.

Furthermore, nothing in the record suggests that the effects of Plaintiff's morbid obesity leave him unable to perform sedentary work.  To the contrary, Dr. Campbell's consultative report diagnoses Plaintiff with "morbid obesity;" describes Plaintiff's physical abilities and limitations as "consistent with the obesity and its consequence;" and provides that Plaintiff could participate in "unrestricted" seated activities, subject to periodic breaks for stretching and certain physical movement limitations, including restrictions on weight lifting; limited bending, squatting, and above shoulder reaching; and limited repetitive use of the upper extremities.  (Admin. R. at 211–14).  Therefore, I conclude that the ALJ's RFC determination is supported by substantial evidence and is complete in its analysis and consideration of Plaintiff's impairments, including the effects of Plaintiff's obesity.

### c. *Substantial Evidence Supports the ALJ's Decision*

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ did not give adequate consideration to the effects of Plaintiff's obesity in evaluating the severity of Plaintiff's impairments and in determining Plaintiff's RFC.  (*Id*. at 5.)  Plaintiff's arguments are misplaced.

Plaintiff seems to argue that the ALJ erred in failing to find that Plaintiff met an established listing.  (Pl.'s Br. at 6.)  Plaintiff, however, does not state which listing he might meet.

Moreover, Plaintiff does not provide a single citation to medical evidence in his argument as to why the ALJ erred. (*Id.*) Further, the record patently shows that the ALJ considered the consultative report by Dr. Campbell, which, as noted above, expressly states that Plaintiff retained the ability to perform a full range of sedentary work subject to rest periods and certain physical movement limitations. (Admin. R. at 214.)

Also contrary to Plaintiff's allegations, the record clearly shows that the ALJ specifically considered Plaintiff's obesity and its effect on Plaintiff's RFC, as discussed *supra* in Analysis § 3(b). The ALJ's decision is properly supported by substantial evidence in the record. Accordingly, I find that the ALJ did not err in his determination at step two or in his determination of Plaintiff's RFC at step four.

*4.     Conclusion*

Based on the foregoing it is therefore

ORDERED that the Commissioner's decision is AFFIRMED.

Dated this  20th  day of September, 2005.

BY THE COURT:

  s/Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge